IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

MAGGIE MAE BARK, )
)
      **Plaintiff,** )
)
vs. ) Case No. 13-cv-00557-TLW
)
CAROLYN W. COLVIN, )
Acting Commissioner )
of Social Security Administration, )
)
      **Defendant.** )

## OPINION AND ORDER

Plaintiff Maggie Mae Bark seeks judicial review of the decision of the Commissioner of the Social Security Administration denying her claim for disability insurance benefits and supplemental security income benefits under Titles II and XVI of the Social Security Act ("SSA"), 42 U.S.C. §§ 416(i), 423, and 1382c(a)(3). In accordance with 28 U.S.C. § 636(c)(1) & (3), the parties have consented to proceed before a United States Magistrate Judge. (Dkt. 10). Any appeal of this decision will be directly to the Tenth Circuit Court of Appeals.

## INTRODUCTION

In reviewing a decision of the Commissioner, the Court is limited to determining whether the Commissioner has applied the correct legal standards and whether the decision is supported by substantial evidence. Grogan v. Barnhart, 399 F.3d 1257, 1261 (10th Cir. 2005). Substantial evidence is more than a scintilla but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Id. The Court's review is based on the record, and the Court will "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." Id. The Court may neither re-weigh the evidence nor substitute

its judgment for that of the Commissioner. Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005). Even if the Court might have reached a different conclusion, if supported by substantial evidence, the Commissioner's decision stands. White v. Barnhart, 287 F.3d 903, 908 (10th Cir. 2002).

## BACKGROUND

Plaintiff, then a 27 year old female, applied for benefits under Titles II and XVI on August 9, 2010. (R. 124-27, 128-31). Plaintiff alleged a disability onset date of February 25, 2009. (R. 124-27). Plaintiff claimed she was unable to work due to peripheral vascular disease, back pain, arthritis, depression, post-traumatic stress disorder, osteoporosis, potassium deficiency, gastric bypass, and tendonitis. (R. 172). Plaintiff's claim for benefits was denied initially on December 10, 2010, and on reconsideration on March 18, 2011. (R. 63, 76). Plaintiff then requested a hearing before an administrative law judge ("ALJ"). (R. 82-83). The ALJ held the hearing on February 10, 2012. (R. 30). The ALJ issued a decision on March 15, 2012, denying benefits. (R. 11-25). The Appeals Council denied review, so the ALJ's March 15, 2012 decision is the final decision of the Commissioner. (R. 1-6, 11-25). Plaintiff timely filed an appeal. (Dkt. 2).

**The ALJ's Decision**

The ALJ found that plaintiff was insured through September 30, 2013. (R. 13). The ALJ found that plaintiff had not performed any substantial gainful activity since her alleged disability onset date of February 25, 2009. Id. The ALJ determined that plaintiff had the severe impairments of peripheral vascular disease and left peroneal neuropathy with left foot drop, history of back pain, depression, and post-traumatic stress disorder. (R. 14). The ALJ noted that the additional medically determinable impairments of osteoporosis, potassium deficiency, history

of gastric bypass, gallbladder surgery, and tongue surgery were all non-severe impairments. Id. The ALJ also established that plaintiff's opioid dependence was a non-severe impairment, especially in light of the success of the treatment she received to lessen that dependence. (R. 15).

After considering plaintiff's impairments, the ALJ determined that plaintiff did not meet or equal a listing. Id. Under the "paragraph B" criteria, plaintiff had moderate restrictions in activities of daily living, social functioning, and concentration, persistence, and pace; and no episodes of decompensation. (R. 15-17). Plaintiff also did not meet the "paragraph C" criteria. (R. 17).

The ALJ next performed a detailed analysis of the record to determine plaintiff's residual functional capacity ("RFC"). Id. The ALJ began by stating the standards used in making the determination and then summarizing plaintiff's testimony. (R. 17-18). Plaintiff lives with her parents, has no income, and no minor children. (R. 18). Plaintiff testified that she has vascular disease that causes a burning pain in her legs, even with medication, and that sometimes her legs go numb. Id. She further testified that she has low back pain that radiates down into her legs. Id. Plaintiff asserts that she can only stand for twenty minutes, and then must rest for ten to fifteen minutes. Id. Plaintiff further asserts that she can only sit for thirty minutes at a time, and can only walk for less than a half mile. Id. Plaintiff indicates that she has problems kneeling and bending, can only lift up to ten pounds frequently, and spends four hours per day sleeping. Id. Plaintiff testified to problems sleeping, and that she is able to drive, but sometimes her legs go numb. Id. The ALJ also considered the testimony of Loetta Bark, plaintiff's mother, regarding plaintiff's daily activities. (R. 16, 18).

The ALJ found that plaintiff's "statements concerning the intensity, persistence[,] and limiting effects of [her impairments] are not credible to the extent they are inconsistent with the

3

[RFC] assessment." (R. 18). The ALJ documented discrepancies between plaintiff's statements and the objective evidence in the record. He noted that plaintiff's daily activities could not be objectively verified; and further concluded that if plaintiff's daily activities were as limited as stated, "it is difficult to attribute that degree of limitation to [plaintiff]'s medical condition, as opposed to other reasons, in view of the medical evidence…" (R. 21).

The ALJ next provided a detailed account of the medical record, as listed below. (R. 19-21). The account of the record was thorough, and discussed all of the record relevant to plaintiff's claims. Plaintiff's second claim is directed to new evidence submitted to the Appeals Council that was not before the ALJ. In November of 2008, tests revealed peripheral vascular disease of the bilateral lower extremities distal to the knees. (R. 19). In January of 2009, Dr. Legarreta performed a physical examination of plaintiff's legs at Claremore Indian Hospital and determined that plaintiff had acute left leg peroneal palsy. In February of 2009, nerve conduction and electromyography tests led Dr. Hardage, a physician with Eastern Oklahoma Orthopedic Center, to diagnose plaintiff with left foot drop with left peroneal neuropathy. In April of 2009, Dr. Legarreta performed a physical examination of plaintiff and found that while plaintiff had a limping gait, chronic left leg peroneal nerve palsy, chronic tensor fascia lata myofacial pain, and peripheral vascular disease of the lower extremities, overall plaintiff's condition was improving. Id. All of these serve as diagnoses by treating physicians. In September of 2011, testing revealed no evidence of deep vein thrombosis, which would have indicated progression of plaintiff's peripheral vascular disease. Records from the Claremore Indian Hospital at that time indicated that while plaintiff had chronic back and leg pain, and acute left leg peroneal palsy, plaintiff had stable left extremity neuro and strength. Id.

The only medical testing regarding plaintiff's back was an MRI performed in November of 2009, which revealed some degeneration of the L5-S1 disk, but only slight bulging and no disc protrusion or herniation. (R. 19-20). The MRI served as the medical basis for plaintiff's claims of back pain.

The plaintiff also alleged mental impairments, and the ALJ considered the medical records of her mental impairments. (R. 20-21). In September of 2009, plaintiff was diagnosed with post-traumatic stress disorder during a consultation at Salina Cherokee Nation Indian Clinic. (R. 20). As a result of the diagnosis, that same month plaintiff was prescribed medication for depression and anxiety by the same facility, as well as Claremore Indian Hospital, but she did not receive any counseling until October of 2011. Id. In August of 2011, plaintiff told Marjorie B. Butler, an advanced nurse practitioner, that she had tried some Adderall and that it made her feel better, so Ms. Butler prescribed Adderall. Id. In October of 2011, Dr. Ginzburg, a psychiatrist at Claremore Indian Hospital, began counseling plaintiff and diagnosed her with depression. Also in October of 2011, Dr. Smith, an osteopathic doctor at Claremore Indian Hospital, stated that plaintiff was doing well physically, including normal gait, but was depressed. Id. In December of 2011, plaintiff told Dr. Smith that she felt much better and "freer," and was seeking employment. Id. In January of 2012, plaintiff added that she was making new friends, journaling, and had joined a chat room for recovering opioid users. Id.

The ALJ next considered the consultative examinations. (R. 20-21). In October of 2010, Ashley Gourd, M.D. performed a physical consultative examination, and Denise LaGrand, Psy.D. performed a psychological consultative examination. Id. Dr. Gourd diagnosed plaintiff with depression, chronic leg and back pain, peripheral vascular disease, and osteoporosis, noting that during the examination plaintiff moved normally and without pain. (R. 20). Dr. LaGrand

diagnosed plaintiff with post-traumatic stress disorder, major depressive disorder (moderate), and pain disorder due to general medical condition. (R. 21).

The ALJ also summarized the opinion evidence offered. (R.22-23). Ms. Butler's opinion was not given controlling weight as nurse practitioners are not acceptable medical sources (SSR 06-03p),[1] but the medical impairments had already been diagnosed by a treating physician and Ms. Butler's opinion was found to be consistent with the rest of the medical record. (R. 22). Ms. Butler filled out a medical report of work or school status, indicating that plaintiff needed a day of bed rest, but also stating that plaintiff should be able to return to work thereafter. The ALJ found, in conjunction with discussion of Ms. Butler's opinion, that the severity of plaintiff's peripheral vascular disease and left peroneal neuropathy with left foot drop would limit plaintiff to sedentary work. Id.

State agency medical consultants examined the record and were of the opinion that plaintiff's physical limitations were non-severe. Id. These opinions did not change the ALJ's determination that the physical limitations were severe. Id.

Dr. LaGrand opined that plaintiff had a low to below average ability to "perform adequately in most job situations, handle the stress of a work setting, and deal with supervisors or co-workers." (R. 22). The ALJ noted, however, that Dr. LaGrand did not translate this opinion into specific limitations. Id. Dr. Kampschaefer, the State agency psychological consultant, reviewed the medical record, including the opinion of Dr. LaGrand, and completed a mental RFC that indicated specific limitations. Id. Because it was consistent with Dr. LaGrand's opinion and the record as a whole, the ALJ gave Dr. Kampschaefer's opinion great weight. Id.

---

[1] This regulation is available at http://www.socialsecurity.gov/OP_Home/rulings/di/01/SSR2006-03-di-01.html (last visited January 26, 2015).

Taking into account plaintiff's exertional limitations, the ALJ determined that plaintiff was able to perform sedentary work. (R. 17, 22). Taking into account the mental limitations determined by Dr. Kampschaefer, and other non-exertional limitations of record, the ALJ further limited the range of work the plaintiff could perform to simple repetitive tasks with only superficial interaction with supervisors and peers, and no more than incidental contact with the public. Id. Thus:

> After careful consideration of the entire record, the [ALJ] finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except she is limited to simple repetitive tasks, and is able to relate to supervisors and peers on a superficial work basis, with no more than incidental contact with the public.

(R. 17). The ALJ found that plaintiff was unable to return to her previous work as a CNA, a job with a medium exertion level, in light of plaintiff's RFC of less than the full range of sedentary work. (R. 23).

The ALJ then considered the plaintiff's age (27), which put her in the range of a younger individual; her high school education; the fact that she can communicate in English; and her RFC. Id. The ALJ found transferability of skills to be immaterial in this case. Considering all of those factors, the ALJ found that "there are jobs in significant numbers in the national economy that the [plaintiff] can perform." Id. Additionally, a vocational expert, who was present for the testimony of plaintiff and her mother, was presented with information about plaintiff's past work and a hypothetical representing plaintiff's RFC and further limitations. (R. 24, 32, 50-57). Based on this information, the vocational expert determined that plaintiff would be able to perform the representative jobs of a table worker and clerical worker, both jobs available in significant numbers in the national and regional economy. (R. 24, 56-57). Accordingly, the ALJ found that plaintiff was not disabled. (R. 24).

## ANALYSIS

Plaintiff raises two issues on appeal. First, plaintiff argues that Ms. Butler's opinion should have been given controlling weight as she was essentially a treating physician, and failing that, the ALJ should have expressly stated the weight given to Ms. Butler's opinion and should have applied the factors listed in SSR 06-03p. Second, plaintiff argues that the medical assessment completed by Ms. Butler and submitted by plaintiff after the ALJ's unfavorable decision warrants changes in the ALJ's RFC, and that it was prejudicial error on the part of the Commissioner not to reassess the RFC to reflect the additional limitations in Ms. Butler's assessment.

### Ms. Butler's Opinion

Plaintiff contends that the ALJ was required to give Ms. Butler's opinion controlling weight because she was "essentially" a treating physician. Plaintiff also contends, in the alternative, that the ALJ was required to determine expressly the weight given to Ms. Butler's opinion using the five factors designated for analyzing opinions from "other sources" by SSR 06-03p.

As to the first contention, the ALJ expressly stated that Ms. Butler's opinion was not given controlling weight. In this regard, the ALJ correctly noted that "[a]n advanced registered nurse practitioner is not qualified to render a diagnosis or medical opinion, and is not an 'acceptable medical source.'" (R. 22), SSR 06-03p. Because Ms. Butler was not an "acceptable medical source," her opinion was not entitled to controlling weight. 20 C.F.R. §§ 404.1502, 416.902; SSR 06-03p.

As to the second contention, the Commissioner argues that although the ALJ did not expressly weigh Ms. Butler's opinion, the error is harmless because her opinion is not

inconsistent with plaintiff's RFC. The Commissioner points out that "[w]hen the ALJ does not need to reject or weigh evidence unfavorably in order to determine a claimant's RFC, the need for express analysis is weakened." Keyes-Zachary v. Astrue, 695 F.3d 1156, 1162 (10th Cir. 2012) (citing Howard v. Barnhart, 379 F.3d 945, 947 (10th Cir.2004)). See also Mays v. Colvin, 739 F.3d 569, 578-79 (10th Cir. 2014). Additionally, what plaintiff is referring to as Ms. Butler's "opinion" (which was before the ALJ) stated that plaintiff could return to work the following day with no restrictions. (R. 579). The Court finds the Commissioner's argument persuasive.

"In the case of a nonacceptable medical source … the ALJ's decision is sufficient if it permits us to 'follow the adjudicator's reasoning.'" Keyes-Zachary, 695 F.3d at 1164 (citing SSR 06–03p, 2006 WL 2329939, at *6). The court in Keyes-Zachary found that since the record contained much more relevant evidence of the plaintiff's limitations from acceptable medical sources, the ALJ's failure to assign a specific weight to the observations of the non-acceptable medical source did not represent harmful error. Id. Similarly here, the record contains a large amount of relevant evidence regarding plaintiff's limitations in addition to Ms. Butler's opinion. (R. 212, 216, 546-65, 607, 667, 669, 930, 969). The ALJ specifically cited this evidence, (R. 19), and stated that "[a] medical diagnosis made by a physician has established the claimant's impairment." (R. 22). Since the ALJ identified relevant evidence in the record that supports the finding of an acceptable medical source regarding the same limitation addressed by Ms. Butler, the ALJ's failure to assign a specific weight to Ms. Butler's opinion does not result in harmful error. "In [this] case, the claimant is not prejudiced 'because giving greater weight to [the opinion] would not have helped her.'" Mays, 739 F.3d at 579 (citing Keyes-Zachary, 695 F.3d at 1163).

### Ms. Butler's Assessment

Ms. Butler's medical assessment of ability to do work-related physical activities (hereinafter "Ms. Butler's assessment") was completed and submitted to the Appeals Council after the ALJ determined that plaintiff is not disabled. "Social security regulation 20 C.F.R. § 404.970(b) expressly authorizes a claimant to submit new and material evidence to the Appeals Council when seeking review of the ALJ's decision." O'Dell v. Shalala, 44 F.3d 855, 857, 858 (10th Cir. 1994). The new evidence becomes part of the record, and is considered along with the rest of the record in determining whether the ALJ's decision is supported by substantial evidence. Id. at 858-59.

In Martinez v. Barnhart, the Appeals Council stated in its denial of review that it "considered the contentions submitted in connection with the request for review, as well as the additional evidence" identified and listed on the order. Martinez v. Barnhart, 444 F.3d 1201, 1207 (10th Cir. 2006). Based on this statement, the Tenth Circuit found that the Appeals Council adequately considered the new evidence, satisfying 20 C.F.R. § 404.970(b) requiring an evaluation of "the entire record including the new and material evidence submitted." Id. The court found that no express analysis of new evidence submitted to the Appeals Council in a request for review is required by statute. Id. at 1208.

In this case, the Appeals Council made Ms. Butler's assessment part of the record and listed plaintiff's brief and the assessment on its Order of Appeals Council. On the Notice of Appeals Council Action, the Appeals Council stated that it considered the reasons for review in the brief and the assessment. Having done so, the Appeals Council found that the new evidence, contentions provided, and the other evidence of the record did not provide a basis for changing

the ALJ's decision. Thus, the Appeals Council here did not commit error in that it considered the new evidence, and the existing record, in the same manner as the Appeals Council in Martinez.

**Substantial Evidence**

The ALJ considered the testimony, the medical evidence, the opinion evidence, the consultative examinations, and the characteristics of the plaintiff, in making his determination that plaintiff is not disabled. After reviewing the record, this Court finds that there was substantial evidence to support that determination and that the correct legal standards were applied, with the exception of the harmless error of failure to expressly weigh a consistent opinion.

Further, this Court finds no error in the decision of the Appeals Council to deny review when considering the record as a whole, including the new evidence. The majority of Ms. Butler's assessment was consistent with the RFC as determined by the ALJ, including Ms. Butler's statements that plaintiff can sit for three hours, stand for two hours, and walk for two hours, which are consistent with sedentary work. Ms. Butler also marked on the assessment that if plaintiff needed to lie down she could do so during typical fifteen minute breaks and the lunch hour, which does not indicate an inability to work.

In addition, Ms. Butler marked three limitations on her assessment form, but she failed to provide any written comments. A checklist evaluation, that consists solely of marked boxes and is not supported by testimony or medical evidence, is not substantial evidence. Williams v. Bowen, 844 F.2d 748, 757 (10th Cir. 1988) (citing Frey v. Bowen, 816 F.2d at 515; Brewster v. Heckler, 786 F.2d 581, 585 (3d Cir.1986); Green v. Schweiker, 749 F.2d 1066, 1071 n. 3 (3d Cir.1984)). Ms. Butler's indication of marked limitations is not consistent with the remainder of the record, nor her own opinion that plaintiff could return to medium exertion level work after a

day of bed rest. In light of the lack of evidentiary support for these asserted limitations, the Court finds that Ms. Butler's assessment is not substantial evidence, and certainly not sufficient to render the evidence relied on by the ALJ insubstantial.

## CONCLUSION

The Court finds that the ALJ evaluated the record in accordance with the legal standards established by the Commissioner and the courts. The Court further finds that there is substantial evidence in the record to support the ALJ's decision. Accordingly, the decision of the Commissioner finding plaintiff not disabled is hereby AFFIRMED.

SO ORDERED this 13th day of February, 2015.

_____
T. Lane Wilson
United States Magistrate Judge